ANNA Y. PARK CA SBN 164242
MICHAEL J. FARRELL CA SBN 266553
SUE J.NOH, CA SBN 192134
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone:  (213) 894-1082
Facsimile:  (213) 894-1301
E-Mail  lado.legal@eeoc.gov
           Sue.Noh@eeoc.gov

ELIZABETH A. NACCARATO NV BAR NO 11221
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
333 Las Vegas Boulevard South, Suite 8112
Las Vegas, Nevada 89101
Telephone:  (702) 388-5072
Facsimile:  (702) 388-5094
E-Mail:  Elizabeth.Naccarato@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Case No.: 2:09-cv-01356-PMP-RJJ |
| Plaintiff, | **[PROPOSED] CONSENT DECREE** |
| vs. | |
| GORDON GAMING CORPORATION dba SAHARA HOTEL & CASINO, STOCKBRIDGE/ SBE HOLDINGS, LLC dba SAHARA HOTEL & CASINO, SBEHG LAS VEGAS I, LLC dba SAHARA HOTEL & CASINO, and DOES 1-5, Inclusive, | |
| Defendants | |

# I.

# __INTRODUCTION__

Plaintiff U.S. Equal Employment Opportunity Commission (the "EEOC") and Defendants, Gordon Gaming Corporation, a dissolved Nevada corporation, formerly doing business as the Sahara Hotel & Casino, Stockbridge/SBE Holdings, LLC and SBEHG Las Vegas I, LLC dba Sahara Hotel & Casino (referred to jointly as the "Sahara Entities") (all Defendants hereinafter collectively referred to as, "Defendants") hereby stipulate and agree to entry of this Consent Decree (this "Decree") to fully and finally resolve Plaintiff EEOC's first amended complaint against Defendants in *EEOC v. Gordon Gaming et al;* Case No. 2:09-cv-01356-PMP-RJJ (the "Complaint").  On December 3, 2009, Plaintiff filed this Action in the United States District Court, District of Nevada, alleging violations of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a) ("Title VII").  The Action alleged that Defendants discriminated against Ezzat Elias ("Charging Party") on the basis of his national origin, Egyptian, and retaliated against Charging Party following his complaints of discrimination.  Defendants have denied all allegations.

# II.

# __PURPOSES AND SCOPE OF THE CONSENT DECREE__

A.     The parties to this Decree are the EEOC, Gordon Gaming, and the Sahara Entities.  Gordon Gaming is a dissolved corporation.  As to Gordon Gaming, this Decree is enforceable as against it with respect to the provision for monetary payment only, although the monetary payment obligation is shared by all Defendants.  The scope of this Decree encompasses the Sahara Hotel & Casino located in Las Vegas, Nevada (hereinafter "Sahara").  This Decree shall be binding on and enforceable against the Sahara Entities and their officers, directors, agents, successors and assigns as to all non-monetary relief, and against the Sahara Entities and Gordon Gaming as to all monetary relief.

B.      The parties have engaged in mediation of their disputes and have entered into this Decree in order to settle and resolve all disputes and differences relative to the claims referenced in this Action and in order to avoid expensive and protracted litigation including incurring the costs and attorneys' fees as to same.  Defendants intend to enter into a separate settlement agreement with Charging Party.   The SBE Defendants will pay up to $400.00 for reimbursement to the Charging Party to obtain an attorney to review and advise him regarding the separate settlement agreement. EEOC is not a party to any separate settlement agreement between Defendants and Charging Party and did not approve the terms of any such agreement.  The EEOC did not participate in negotiations of any separate settlement agreement, nor did it advise Charging Party regarding any separate settlement agreement in any manner.

C.       The Sahara Entities and the EEOC have entered into this Decree for the following purposes:

    1.      To provide its share of the monetary payment and the injunctive relief provided in this Decree;

    2.      To ensure that the Sahara Entities' employment practices comply with federal law;

    3.      To ensure a work environment free from discrimination, hostility and retaliation;

    4.      To ensure training for the Sahara Entities' managers and employees with respect to their obligations under Title VII; and

    5.      To provide an appropriate and effective mechanism for handling discrimination complaints in the workplace.

D.     The EEOC and Gordon Gaming have entered into this Decree for the sole purpose of providing monetary relief.  Gordon Gaming shall have no other obligations pursuant to this Decree.

### III.
### RESOLUTION OF CLAIMS

A.     This Decree fully and completely resolves all issues, claims, causes of action and allegations by the EEOC against Gordon Gaming and the Sahara Entities that are raised in the Complaint.

B.     Nothing in this Decree shall be construed to preclude any party from bringing suit to enforce this Decree in the event that any party hereto fails to perform the promises and representations contained herein.

C.     Nothing in this Decree shall be construed to limit or reduce the Sahara Entities' obligation to comply fully with Title VII or any other federal employment statute.

D.     This Decree in no way affects EEOC's right to bring, process, investigate or litigate other charges that may be in existence or may later arise against the Defendants in accordance with standard EEOC procedures, to the extent that such claims have not been waived, released or resolved herein.

E.     Entry into or performance of the terms of this Decree is not and shall not in any way be construed as an admission by any party hereto as to the merits of any other party's positions, claims and/or defenses raised in this Action.  Defendants state that they have entered into and agreed to performance of the terms of this Decree and the settlement agreement with Charging Party solely for purposes of settlement pursuant to F.R.E. 408, and that these acts shall not be construed as an admission by Gordon Gaming or the Sahara Entities of liability to any persons, or of any wrongful acts, acts of discrimination, or violations of any federal, state or local law.

## IV.

## <u>JURISDICTION</u>

A.     The Court has jurisdiction over the parties and the subject matter of this lawsuit.  The Complaint asserts claims that, if proven, would authorize the Court to grant the equitable relief set forth in this Decree.  The terms and provisions of this Decree are fair, reasonable and just.  This Decree conforms with the Federal Rules of Civil Procedure and Title VII and is not in derogation of the rights or privileges of any person.

B.     The Court shall retain jurisdiction of this action during the duration of this Decree for the purposes of entering all orders, judgments and decrees that may be necessary to implement the relief provided herein.

## V.

## <u>EFFECTIVE DATE AND DURATION OF DECREE</u>

A.     The provisions and agreements contained herein are effective immediately upon the date which this Decree is entered by the Court ("the Effective Date").

B.     Except as otherwise provided herein, this Decree shall remain in effect for three (3) years after the Effective Date.

## VI.

## <u>MODIFICATION AND SEVERABILITY</u>

A.     This Decree constitutes the complete understanding and agreement of the parties and supersede all prior negotiations, understandings and agreements, whether oral or written of any nature whatsoever with respect to the subject matter hereof, and there are no representations, warranties, understandings or agreements other than those expressly set forth herein.  No waiver, modification or amendment of any provision of this Decree will be effective unless made in writing and signed by an authorized representative of each of the parties.

B.     If one or more provisions of this Decree are rendered unlawful or unenforceable, the parties shall make good faith efforts to agree upon appropriate amendments to this Decree in order to effectuate the purposes of this Decree.  In any event, the remaining provisions will remain in full force and effect unless the purposes of this Decree cannot, despite the parties' best efforts, be achieved.

C.     By mutual agreement of the parties, this Decree may be amended or modified in the interests of justice and fairness in order to effectuate the provisions of this Decree.

## VII.

## <u>COMPLIANCE AND DISPUTE RESOLUTION</u>

A.     The parties expressly agree that if the Commission has reason to believe that Defendants have failed to comply with any provision of this Decree, the Commission may bring an action before this Court to enforce this Decree.  Prior to initiating such action, the Commission will notify Defendants and their legal counsel of record, in writing, of the nature of the dispute.  This notice shall specify the particular provision(s) that the Commission believes have been breached and shall describe the facts the Commission believes to constitute the violation or dispute with reasonable specificity.  Absent a showing that the delay will cause irreparable harm, the parties shall have thirty (30) days to attempt to resolve or cure the breach.

B.     The parties agree to cooperate with each other and use their reasonable best efforts to resolve any dispute regarding breach of the terms of this Decree. The Commission shall notify the other parties of its position as to whether the breach has been resolved or cured within thirty (30) days following receipt of written notice of breach from the Initiating Party.

C.     At any time following receipt by Defendants of the written Notice referenced in paragraph B above, unless the thirty (30) day time frame has been

extended, the Commission may petition this Court for resolution of the dispute, seeking all available relief, including, if the Initiating Party is the EEOC, an extension of the term of this Decree for such period of time as a defendant is shown to be in

material breach of this Decree.

## VIII.

## <u>MONETARY RELIEF TO CHARGING PARTY</u>

A.    <u>Monetary Payments</u>

In settlement of this lawsuit, Defendants shall pay a total of $100,000.00 as follows:

1.    <u>Payment to Charging Party</u>**:**  Gordon Gaming and the Sahara Entities shall forward, via certified mail, a check(s) totaling the amount of $85,000.00 to the Charging Party within (10) days following the later of (i) the expiration of the seven (7) day revocation period specified in the settlement agreement into between Defendants and Charging Party or (ii) entry and filing by the Court of the Consent Decree.

(a)    Those monies are representative of asserted compensatory damages and are not wages, a fine, penalty or punitive sanction, and no tax withholding shall be made.  Defendants shall issue IRS Form 1099's to the Charging Party for the payment of these monies.  Within three (3) business days of the issuance the settlement check(s), Defendants shall submit a copy of the check(s) and related correspondence to the Regional Attorney, Anna Y. Park, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, CA 90012.  This payment is in full settlement of any and all claims contained in the Complaint against Gordon Gaming as of the date of this Decree. This payment and the Sahara Entities' entry into this Decree, by which they agree

to the injunctive relief set forth below, is in full settlement of any and all claims contained in the Complaint against the Sahara Entities as of the date of this Decree.

2.     Payment to the Nevada Equal Rights Commission (NERC):

The Sahara Entities shall forward, via certified mail, a check in the amount of $15,000.00 to the Nevada Equal Rights Commission (NERC), to be used by the NERC for purposes of education and training, within ten (10) business days of the effective date of this Decree.  Within three (3) business days of the issuance this check, the Sahara Entities shall submit a copy of the check and related correspondence to the Regional Attorney, Anna Y. Park, U.S. Equal Employment Opportunity Commission, 255 East Temple Street, 4th Floor, Los Angeles, CA 90012.

B.     Other Relief to Charging Party

1.     Sahara Entities agree to purge Charging Party's employment records of any negative warnings, disciplines, or other negative references during the time of his employment up to the Effective Date. Notice contained in Charging Party's file of any reduction in force/hours reduction and/or his January 4, 2010 layoff shall not be considered a "negative reference" within the meaning of this paragraph.

2.     If an inquiry is made into Charging Party's employment history, the Sahara Entities shall comply with its current policy by disclosing only the dates of employment and the position he held.   The Sahara Entities shall explain that its internal policy allows it to reveal only that information to prospective employers.

## IX.

## GENERAL INJUNCTIVE RELIEF

A.  <u>NON-DISCRIMINATION</u>

    1.  *<u>Harassment Based on National Origin</u>*

The Sahara Entities, their officers, agents, management (including all supervisory employees), successors, assigns, and all those in active concert   or participation with them, or any of them, are enjoined from engaging in employment practices in violation of Title VII including: (a) harassment or tolerating harassment  against persons on the basis of national origin in the terms and conditions of employment; (b) engaging in or being a party to any action, policy or practice that is intended or is known to them to have the effect of harassing or intimidating any employee on the basis of national origin; and (c) creating, facilitating or permitting the existence of a work environment that is hostile to employees of middle eastern descent.

    2.  *<u>Retaliation</u>*

The Sahara Entities, their officers, agents, management (including all supervisory employees), successors, assigns, and all those in active concert or participation with them, or any of them, are enjoined from engaging in, implementing or permitting any action, policy or practice with the purpose of retaliating against any current or former employee or applicant of the Sahara, or either of them, because he or she has in the past, or during the term of this Decree: (a) opposed any practice made unlawful under Title VII; (b) filed a charge of discrimination alleging such practice; (c) testified or participated in any manner in any investigation (including without limitation, any internal investigation undertaken by the Sahara Entities), proceeding in connection with this case and/or relating to any claim of a Title VII violation; (d) was identified as a possible

witness or claimant in this action; (e) asserted any rights under this Decree; or (f) sought or received any relief in accordance with this Decree.

B.   POSTING

Within ten (10) business days after the Effective Date and throughout the term of this Decree, the Sahara Entities shall post notice, in a clearly visible location frequented by employees at the Sahara.  The notice shall remain posted for three (3) years.

C.   EQUAL EMPLOYMENT OPPORTUNITY CONSULTANT

Within thirty (30) days after the Effective Date, the Sahara Entities shall retain an Equal Employment Opportunity Consultant ("Consultant") with demonstrated experience in the area of employment discrimination and national origin harassment issues, specifically on issues related to harassment of persons of Middle Eastern descent, to monitor the Sahara Entities' compliance with Title VII and the provisions of this Decree.  The Consultant shall be subject to the Commission's approval, which shall not be unreasonably withheld.  The EEOC expressly agrees that the law firm of Kamer Zucker Abbott is an acceptable selection for the role of Equal Employment Opportunity Consultant.  In the event that the law firm of Kamer Zucker Abbott shall cease being the Consultant, the Sahara Entities shall propose a Consultant to the Commission.  If the Commission does not approve the new proposed Consultant, the Commission shall provide the Sahara Entities with a list of at least three suggested candidates acceptable to the Commission.  The Sahara Entities shall bear all costs associated with the selection and retention of the Consultant and the performance of his/her/its duties.  The Consultant's responsibilities shall include:

1.   Review and possible revision of the Sahara Entities' procedures to handle complaints of discrimination, harassment and retaliation in compliance with their obligations under this Decree;

2.      Review and possible revision of the Sahara Entities' anti-harassment policy and reporting procedure to effectively carry out its obligations under this Decree;

3.      Review and possible revision of modules and procedures for training all managerial and human resources employees on their rights and responsibilities under Title VII, including but not limited to the responsibilities to provide a workplace free of discrimination;

4.      Review and possible revision of modules and procedures for training all managerial and human resources employees on policies and procedures relating to national origin discrimination/harassment and retaliation;

5.      Monitoring the Sahara Entities' investigation of all complaints of national origin discrimination/ harassment and retaliation in compliance with this Decree;

6.      Review and possible revision of  the Sahara Entities' policies to appropriately communicate with complainants regarding the complaint procedure, status of the complaint investigation, results of the investigation, and any remedial action taken;

7.      Preparation and timely submission of accurate reports by the Sahara Entities as required by this Decree;

8.      Review and possible revision of the Sahara Entities' disciplinary policies to hold employees and managers accountable for failing to take appropriate action or for engaging in conduct prohibited under this Decree;

9.      Development and implementation or revision, as necessary, of a centralized system for the Sahara Entities to track discrimination, harassment, and retaliation complaints by employees of the Sahara Hotel & Casino;

10.    Monitoring and assisting with Sahara Entities' compliance with the terms of this Decree; and

11.    Preparing a brief annual report on the Sahara Entities' progress with required steps and its compliance with this Decree, as further set forth below.

D.    POLICIES CONCERNING DISCRIMINATION AND HARASSMENT

The Sahara Entities shall, within thirty (30) business days after the Effective Date, provide a copy to the Commission of its revised policy on discrimination and national origin harassment that shall include:

1.    A clear explanation of prohibited conduct;

2.    Assurance that employees who make complaints of harassment/discrimination or provide information related to such complaints will be protected against retaliation;

3.    A clearly described complaint process that provides accessible and confidential avenues of complaint with contact information including name (if applicable), address, and telephone number of persons both internal (i.e., Human Resources) and external to the Sahara Entities (i.e., Commission and Consultant available to handle complaints concerning high level company officials of the Sahara Entities' corporate hierarchy) to whom employees may report discrimination and retaliation, including a written statement that the employee may report the discriminatory behavior to designated persons outside their chain of management;

4.    Assurance that the employer will protect the confidentiality of harassment/discrimination complaints to the extent possible;

5.    A complaint process that provides a prompt, thorough, and impartial investigation;

6.      A procedure for communicating with the complainant in writing regarding the status of the complaint/investigation, results of the investigation, and any remedial action taken;

7.      Assurance that the Sahara Entities will take immediate and appropriate corrective action when it determines that harassment/discrimination and/or retaliation has occurred; and

8.      Assurance that Sahara Entities' disciplinary policies hold employees and managers accountable for failing to take appropriate action or for engaging in conduct prohibited under this Decree.

EEOC shall comment on the revised policy in writing within forty-five (45) days of receipt. Should the policy not require any further revision, the Sahara Entities shall confirm distribution of the policy no later than ten (10) business days after receipt of the above-referenced written notice.  If the policy requires revision, the Sahara Entities shall make the revision and submit the revised policy within twenty-one (21) business days.  EEOC shall provide written notice of its review of any further revised policy within thirty (30) days.  Should the policy re-submitted by the Sahara Entities not require any revision, the Sahara Entities shall confirm distribution of the policy no later than ten (10) business days after receipt of the above-referenced written notice. The policy shall be distributed to all employees, including management/supervisory staff, and shall be included in any relevant policy or employee manuals distributed to employees by the Sahara Entities.  The Sahara Entities shall maintain acknowledgments from each employee who receives the revised policy.  Throughout the term of this Decree, the Sahara Entities shall also post the revised policy printed in, at minimum, a 12-point font, in a place that is clearly visible to all employees of the Sahara as covered by this Decree.

/ / /

/ / /

**E.      TRAINING**

Within 120 days after the Effective Date or 120 days after hiring the Consultant, whichever is later, all of the Sahara's managerial, supervisory, and human resources employees shall be required to attend an intensive training program of at least three (3) hours.  Within 180 days after the Effective Date or 180 days after hiring the Consultant, whichever is later, all employees shall be required to attend a training program of at least one (1) hour in order to review the revised policies and procedures regarding harassment, and to review EEO law. Each such training class shall be a consistent of live training and, if the Consultant recommends, incorporation of a video-recorded element into the live training. The training shall be mandatory for all employees.  Such training shall be administered once every year for the term of this Decree.  Any manager, supervisor, or employee who failed to attend scheduled training shall be trained within (30) days of the initial training set forth above.

1 .     All employees' training shall include coverage of the subjects of equal employment opportunity rights and responsibilities, discrimination, harassment, retaliation, and the Sahara Entities' revised policies and procedures for reporting and handling complaints of discrimination, harassment and retaliation.

2.      Training of managerial/supervisory and human resources employees shall additionally include training on how to properly handle and investigate complaints of discrimination and/or harassment in a neutral manner, how to take preventive and corrective measures against discrimination and/or retaliation, and how to recognize and prevent discrimination and/or retaliation.

3.      For the remainder of the term of this Decree, all new managerial, supervisory, and human resources employees and all employees recently promoted

from a staff/hourly to a managerial or supervisory position shall receive the managerial training within thirty (30) days of hire or promotion.

4.      After the initial training as specified above, all managerial, supervisory, and human resources employees shall receive the training at least annually thereafter for the remainder of the term of this Decree.

5.      All employees required to attend such training shall verify their annual attendance in writing.

6.      Within ninety (90) days after the Effective Date or hiring of the Consultant, whichever is later, the Sahara Entities shall submit to the EEOC a description of the training to be provided and an outline of the curriculum developed for the trainees.

7. Human Resources training shall be specific to their obligations, including the handling and investigating of complaints of discrimination and retaliation. This training shall be above and beyond the supervisor/manager training as set forth above. Attendance within the twelve (12) months preceding the Effective Date of a training program offered by the EEOC shall be deemed compliance with this paragraph.

F.      PERFORMANCE EVALUATIONS

In the event the Sahara Entities implement a performance evaluation procedure for its management/supervisory personnel, the Sahara Entities shall revise their performance evaluation forms for managers and supervisors in order to include as measures for performance compliance with the Sahara Entities' Anti-Discrimination and Retaliation Policies and Procedures.

\ / /

/ / /

/ / /

/ / /

# X.

## RECORD KEEPING AND REPORTING

A.     <u>RECORD KEEPING</u>

      The Sahara Entities shall establish a record-keeping procedure that provides for the centralized tracking of discrimination complaints and the monitoring of such complaints to prevent retaliation. The records to be maintained shall include:

    1.     All documents generated in connection with any complaint, investigation into, or resolution of every complaint of discrimination or retaliation for the duration of this Decree and the identities of the parties involved;

    2.     All forms acknowledging employees' receipt of the Sahara Entities' revised discrimination and anti-retaliation policy;

    3.     All documents verifying the occurrence of all training sessions and names and positions of all attendees for each session as required under this Decree; and

    4.     Documents tracking and analyzing complaints filed against the same employee and location.

    The foregoing documents shall be summarized in the semi-annual reports set forth below.

B.     <u>REPORTING</u>

      In addition to the notices to the EEOC specified above, the Sahara Entities shall provide, without assertion of the attorney-client privilege or attorney work product, the following reports to the EEOC in writing, by mail or facsimile:

    1.     Within 120 days after the Effective Date, the Sahara Entities shall submit to the EEOC an initial report which contains:

        (a)     A copy of the revised discrimination and anti-retaliation policy;

(b) A summary of the procedures and record-keeping methods developed with the Consultant for centralized tracking of discrimination complaints and the monitoring of such complaints;

(c) A statement confirming that the required notices pertaining to this Decree and the revised discrimination and anti-retaliation policies have been posted; and

(d) Copies of all employee acknowledgment forms indicating receipt of the revised discrimination and anti-retaliation policy.

2.      The Sahara Entities shall also provide the following reports semiannually throughout the term of this Decree:

(a)      The attendance lists of all attendees for all training sessions required under this Decree that took place during the previous six months;

(b)      A description of all discrimination and/or retaliation complaints made since the submission of the immediately preceding report hereunder.  This description shall include the names of the individuals alleging harassment or retaliation, the nature of the alleged harassment or retaliation, the names of the alleged perpetrators of harassment or retaliation, the dates of the alleged harassment or retaliation, a brief summary of how each complaint was addressed, and the identity of the Sahara employee(s) who investigated or addressed each complaint.  If no results have been reached as of the time of the report, the result shall be included in the next report;

(c)      Reporting of whether there have been repeat complaints by employees and the results of the investigation of those complaints; and

(e)     Any changes of the procedures or record-keeping methods for centralized tracking of discrimination complaints and the monitoring of such complaints within the previous six months.

## XI.

## COSTS OF ADMINISTRATION AND IMPLEMENTATION OF DECREE

Gordon Gaming shall bear all costs associated with the administration and implementation of its share of the monetary payment obligations under this Decree.  The Sahara Entities shall bear all costs associated with their share of the monetary payment and all costs of administration and implementation of all non-monetary obligations under this Decree.

## XII.

## COSTS AND ATTORNEYS' FEES

Each party shall bear its own costs of suit and attorneys' fees.

## XIII.

## MISCELLANEOUS PROVISIONS

A.     During the term of this Decree, the Sahara Entities shall provide any potential successor-in-interest with a copy of this Decree within a reasonable time prior to the execution of any agreement for acquisition or assumption of control of any or all of the Sahara Entities' assets and shall simultaneously inform the EEOC of same.

B.     During the term of this Decree, the Sahara Entities and their successors shall notify each of its officers, managers and supervisors all term(s) of this Decree which may be related to his/her job duties.

C.     Unless otherwise stated, all notices, reports and correspondence required under this Decree shall be delivered to the attention of the Regional Attorney,

1   Anna Y. Park, U.S. Equal Employment Opportunity Commission, Los Angeles

2   District Office, 255 E. Temple St., 4th Fl., Los Angeles, CA. 90012.

3   D.      This Decree shall be binding on all of the parties and their respective

4   successors and assigns.

5   E.      The parties agree to entry of this Decree and judgment subject to final

6   approval by the Court.

7

8                                              EQUAL EMPLOYMENT
                                               OPPORTUNITY COMMISSION
9

10          Dated: 11-22-10              By:
11                                              Anna Y. Park
                                                Attorneys for Plaintiff
12

13                                         Stockbridge/SBE Holdings, LLC
                                           SBEHG Las Vegas I, LLC
14

15          Dated: 10-26-10              By:
16                                         Carol Davis Zucker
                                           Timothy W. Roehrs
17                                         Gordon Gaming Corporation, a
                                           dissolved Nevada corporation, formerly
18                                         doing business as the Sahara Hotel &
                                           Casino
19

20          Dated: 11-2-10              By: Elayna Zouchah
21                                          Elayna J. Youchah.

22

23

24

25

26

27

28

**[PROPOSED ORDER]**

**GOOD CAUSE APPEARING:**

The Court hereby retains jurisdiction and the provisions of the foregoing Decree are hereby approved and compliance with all provisions thereof is **HEREBY ORDERED.**

**IT SO ORDERED.**

Dated:  12/7/2010     _____

United States District Judge